BRIAN LEE JOHNSRUD, State Bar No. 184474
SCOTT P. PEARTREE, State Bar No. 240197
MICHELLE A. GRIFFITH-JONES, State Bar No. 259914
MORGAN, LEWIS & BOCKIUS LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Tel: 650.843.4000
Fax: 650.843.4001
E-mail: bjohnsrud@morganlewis.com
speartree@morganlewis.com
mgriffithjones@morganlewis.com

Attorneys for Defendant
BLOCKBUSTER INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA S. CURRIE-WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BLOCKBUSTER, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:09-CV-02593 MMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[FRCP 12(b)(6)]**<br><br>Date: July 31, 2009<br>Time: 9:00 a.m.<br>Courtroom: 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|
| I. | FACTUAL ALLEGATIONS | | | 2 |
| II. | ARGUMENT | | | 2 |
| | A. | Standard of Review | | 2 |
| | B. | Plaintiff's Complaint Fails To State A PAGA Claim | | 2 |
| | | 1. | Plaintiff Cannot Seek Penalties Under PAGA Because Wage Order 7 Contains Its Own Civil Penalty Provision | 2 |
| | | 2. | Section 14 Cannot Serve As The Predicate To A PAGA Violation Because The IWC and OSHSB Failed To "Consult," As Required by Labor Code Section 1173 | 5 |
| | | 3. | To The Extent PAGA Applies To Section 14 Of The Wage Order, It Violates The Equal Protection Clause of the U.S. Constitution | 10 |
| | | 4. | PAGA Violates The California Constitution's Separation of Powers Doctrine | 11 |
| | | 5. | To The Extent Plaintiff Advances A Viable Legal Theory, She Fails to Allege Sufficient Facts to State a Claim | 14 |
| III. | CONCLUSION | | | 15 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. ___, 129 S.Ct. 1937 (2009) .......... 14

*Bagley v. City of Manhattan Beach*,
18 Cal. 3d 22 (1976) .......... 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 14

*Board of Supervisors v. Local Agency Formation Comm'n of Sacramento County*,
3 Cal. 4th 903 (1992) .......... 10

*California Hotel and Motel Assn. v. Industrial Welfare Commission*,
25 Cal. 3d 200 (1979) .......... 6

*California Manufacturers Association v. Industrial Welfare Commission*,
109 Cal. App. 3d 95 (1980) (*CMA*) .......... 8

*Cicairos v. Summit Logistics, Inc.*,
133 Cal. App. 4th 949 .......... 4

*Commodity Futures Trading Commission v. Schor*,
478 U.S. 833 (1986) .......... 12

*Hale v. Morgan*,
22 Cal. 3d 388 (1978) .......... 5

*Hamilton v. San Francisco Hilton, Inc.*,
No. 04-431310 (Cal. Superior Court, County of San Francisco June 17, 2005) .......... 4, 5

*Henning v. Industrial Welfare Commission*,
No. 674-671, 1975 WL 19985
(Cal. Superior Court, County of San Francisco, Jan. 20, 1975) .......... 5, 6, 8

*Hitchcock Trans. Co. v. Industrial Welfare Commission*,
27 Cal. 3d 736 (1980) .......... 7

*Kamar v. Radioshack Corp.*,
No. CV 07-2252 AHM, 2008 WL 2229166 .......... 3

*Kelly v. Boeing Co.*,
9 F.3d 743 (9th Cir. 1993) .......... 12, 13

*Lett v. Paymentech*,
81 F. Supp. 2d 992 (N.D. Cal. 1999) .......... 10

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Reynolds v. Sims*, 377 U.S. 533 (1964) ..... 10

*Santa Clara County v. Southern Pacific R. Co.*, 118 U.S. 394 (1886) ..... 10

*Southern R. Co. v. Greene*, 216 U.S. 400 (1910) ..... 10

*State v. Richmond*, 730 N.W.2d 62 (Minn. Ct. App. 2007) ..... 10

*United States v. Shasta Services, Inc.*, 440 F. Supp. 2d 1108 (E.D. Cal. 2006) ..... 12

*White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) ..... 1, 9

**Statutes**

Cal. Labor Code § 2698 ..... 2

California Labor Code Section 1173 ..... 1

California Labor Code Section 1197.1 ..... 4

Labor Code Section 2699(f) ..... 1

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 9:00 a.m. on July 31, 2009, or as soon thereafter as the matter can be heard in Courtroom 7 of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Blockbuster Inc. will, and hereby does, move this Court to dismiss the lone cause of action that Plaintiff Melissa Currie-White asserts against it under Federal Rule of Civil Procedure 12(b)(6). This Motion is brought on the following grounds:

1. Plaintiff cannot seek Private Attorneys General Act (PAGA) penalties under Labor Code Section 2699(f) because the alleged predicate Labor Code violation (Labor Code Section 1198, incorporating Wage Order 7-2001) is subject to its own civil penalty provision, and Plaintiff cannot state a claim for relief under that provision;

2. Section 14 (regarding the provision of seats) of Wage Order 7-2001 is invalid, and thus cannot serve as a predicate to PAGA penalties, because the Industrial Welfare Commission and California Occupational Safety and Health Standards Board failed to consult regarding its adoption, as required by California Labor Code Section 1173;

3. PAGA, as applied to Section 14 of Wage Order 7-2001, violates the Equal Protection Clause of the United States Constitution because it proscribes unequal penalties for the same alleged misconduct;

4. PAGA is unconstitutional because it violates the separation of powers doctrine under the California Constitution; and

5. Plaintiff's Complaint fails to allege sufficient facts to state a claim for relief.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

///

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court should grant Blockbuster's Motion to Dismiss because Plaintiff's Complaint fails to allege a viable claim under the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2698 *et seq.*,[1] or facts sufficient to support such a claim.

### I. FACTUAL ALLEGATIONS

Plaintiff alleges that she worked for Blockbuster as a Customer Service Representative. (Complaint, ¶ 6). Plaintiff further alleges that, in connection with her job as a Customer Service Representative, she regularly operated a cash register. (*Id.*). Plaintiff also alleges that Blockbuster failed to provide her a seat, despite her allegation that the nature of her work reasonably permits the use of seats. (Complaint, ¶ 7). Based on these allegations, Plaintiff seeks relief on behalf of all persons who, during the applicable statute of limitations, were employed by Blockbuster in the State of California as Customer Service Representatives, or any similar position that regularly involves the operation of a cash register, and were not provided with a seat. (Complaint, ¶ 8).

### II. ARGUMENT

#### A. Standard of Review.

A motion to dismiss should be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is proper where there is (1) no cognizable legal theory or (2) an absence of sufficient facts to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

#### B. Plaintiff's Complaint Fails To State A PAGA Claim.

##### 1. Plaintiff Cannot Seek Penalties Under PAGA Because Wage Order 7 Contains Its Own Civil Penalty Provision.

PAGA provides that "any provision of this [Labor] code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency … may, as an alternative, be recovered through a civil action brought by an aggrieved employee." § 2699(a).

---

[1] All further statutory citations are to the California Labor Code, unless otherwise indicated. Emphasis has been added unless otherwise indicated.

PAGA also goes one step further, providing that "[f]or all provisions of this code **except those for which a civil penalty** is specifically provided, there is established a civil penalty for a violation of these provisions." § 2699(f). Thus, if a part of the Labor Code does not establish a civil penalty provision governing certain employer conduct, PAGA establishes a fallback penalty. An aggrieved employee, however, may only obtain the fallback PAGA penalty if the Labor Code has not otherwise addressed civil penalties with respect to the particular violation. *See Kamar v. Radioshack Corp.*, No. CV 07-2252 AHM, 2008 WL 2229166, at *14 (C.D. Cal. May 15, 2008) ("Section 2699(f) contains a default civil penalty for all Labor Code sections that do not explicitly specify any civil penalty" (citing *Caliber Bodyworks, Inc.*, 134 Cal. App. 4th 365, 375 (2005))).

Plaintiff's Complaint seeks to circumvent this rule. She relies in part on Section 1198, which provides:

> The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

Plaintiff alleges that Section 1198 incorporates the Wage Orders, including Wage Order 7; that Wage Order 7 required Blockbuster to provide her and others a seat; and that she can seek remedies for this alleged failure under Section 2699(f). (Complaint, ¶¶ 16, 19). Plaintiff, however, fails to recognize that Wage Order 7 already has its own civil penalty provision, at Section 20, which provides:

> (A) In addition to any other civil penalties provided at law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, **the provisions of this order** shall be subject to a civil penalty of:
>
> (1) Initial Violation -- $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.
>
> (2) Subsequent Violations -- $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.
>
> (3) The affected employee shall receive payment of all wages recovered.

(B) The labor commissioner may also issue citations pursuant to California Labor Code Section 1197.1 for non-payment of wages for overtime work in violation of this order.

Thus, Plaintiff cannot recover the fallback PAGA penalties under Section 2699(f) because Wage Order 7 has addressed those penalties available for infringement of its provisions. *See* Order Granting San Francisco Hilton Inc.'s Motion for Summary Judgment, or in the alternative, Summary Adjudication at 3-4, *Hamilton v. San Francisco Hilton, Inc.*, No. 04-431310 (Cal. Superior Court, County of San Francisco June 17, 2005), Request for Judicial Notice, Exh. 1.

In *Hamilton*, the plaintiff sued her employer under the exact theory alleged here: namely, her employer allegedly violated Section 14 of the Wage Order by failing to provide seats; this violation was incorporated into the Labor Code; was therefore actionable under Section 1198; and plaintiff could therefore recover fallback PAGA penalties. *Id.* The court disagreed, holding that the "Plaintiff cannot, on one hand, assert the Legislature incorporated the seat provisions into the Labor Code, while on the other hand assert, with no authority whatsoever, that Section 20's civil penalty provisions are not incorporated." *Id.* at 4.[2]

In addition, Section 20 of Wage Order 7 defines the extent to which penalties will be allowed as to "the provisions of this order," which means *all* of its provisions. *See Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 958 (holding that the Wage Order's use of the phrase "this order" includes the Wage Order in its entirety and all sections therein). By its terms, Section 20 is triggered by an alleged violation involving an "underpaid employee." IWC Wage Order 7-2001 § 20(1)(A)(B). Here, Plaintiff does not allege that she is an "underpaid employee," but rather, claims only an alleged denial of seating. (Complaint, ¶¶ 16-17). Because seat violations are subject to a penalty provision, albeit one that consciously denies penalties, no PAGA fallback penalties are allowed. *Hamilton*, *supra*, at 4 (holding that "[t]he IWC Order civil penalty is not triggered because there is no evidence of underpayment" and dismissing Plaintiff's PAGA claim based on an alleged failure to provide suitable seat).

---

2 As far as Blockbuster is aware, *Hamilton* is the only decision to address a plaintiff's attempt to claim PAGA penalties based on an alleged violation of Section 14 of the Wage Orders. Blockbuster recognizes that *Hamilton* is a Superior Court decision and is not binding precedent; it should, though, be considered a well-reasoned interpretation of California law.

In sum, the decision in *Hamilton* is well-reasoned and consistent with the rule that penalty statutes must always be construed narrowly. *Hale v. Morgan*, 22 Cal. 3d 388, 405 (1978) ("Because the statute is penal, we adopt the narrowest construction of its penalty clause to which it is reasonably susceptible in the light of its legislative purpose"). Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim.

**2. Section 14 Cannot Serve As The Predicate To A PAGA Violation Because The IWC and OSHSB Failed To "Consult," As Required by Labor Code Section 1173.**

Plaintiff's Complaint also fails to state a PAGA claim based on Section 14 of Wage Order 7 because that section is invalid under the Labor Code. Since 1973, the Industrial Welfare Commission has been obligated to consult with the Occupational Safety and Health Standards Board to determine areas of potential overlap. Specifically, Section 1173 provides:

> Before adopting any new rules, regulations, or policies, **the commission shall consult with the Occupational Safety and Health Standards Board** to determine those areas and subject matters where the respective jurisdictions of the commission and the Occupational Safety and Health Standards Board overlap. This consultation need not take the form of a joint meeting. In the case of such overlapping jurisdiction, the Occupational Safety and Health Standards Board shall have exclusive jurisdiction, and rules, regulations, or policies of the commission on the same subject have no force or effect.

This mandatory consultation must be done by the agencies, not by staff members. *See Henning v. Industrial Welfare Commission*, No. 674-671, 1975 WL 19985, at *3 (Cal. Superior Court, County of San Francisco, Jan. 20, 1975), Request for Judicial Notice, Exhs. 2 and 3 (invalidating the 1974 IWC Wage Orders because the IWC delegated consultation duties to staff in violation of Section 1173); *Bagley v. City of Manhattan Beach*, 18 Cal. 3d 22, 24 (1976) (powers conferred on public agencies which involve the exercise of judgment or discretion are in the nature of a public trust and cannot be surrendered or delegated to subordinates in the absence of statutory authorization).

In this case, the administrative history establishes that the IWC improperly delegated its obligation to "consult" regarding Section 14 to staff members and failed to consult, even on the staff level, on the 1980 amendment to Section 14 as required by Section 1173:

- Effective January 1, 1974, §1173 required the IWC to consult with the OSHSB when promulgating new regulations. *Henning*, *supra* at *2-3. Section 1173 also required the IWC to conduct an immediate review and hearings before implementing new regulations. *California Hotel and Motel Assn. v. Industrial Welfare Commission*, 25 Cal. 3d 200, 207-209 (1979).

- In January 1974, the IWC held an executive session wherein during which it received advice from an Associate Attorney General regarding areas where the OSHSB regulated employment. Request for Judicial Notice, Exh. 4. The document shows no consultation between the IWC and OSHSB on the issue of seats or any other part of the Wage Orders.

- In March 1974, the IWC adopted a set of Wage Orders, which included a regulation regarding the use of seats. *Cal. Hotel and Motel Assn.*, 25 Cal. 3d at 209 n.17; *Henning*, *supra*, at *1.

- On January 20, 1975, the San Francisco Superior Court invalidated the 1974 Wage Orders on the grounds that the IWC failed to follow Section 1173's consultation requirement (and also Section 1178's requirement of the creation of non-consolidated wage boards). *Henning*, *supra*, at *2-3.

- On June 10, 1975, the IWC re-opened the Wage Orders and began developing what became the 1976 Wage Orders. Request for Judicial Notice, Exh. 5.

- On December 9, 1975, in developing the 1976 Wage Orders, members and staff of the IWC and OSHSB held a joint meeting. Request for Judicial Notice, Exh. 6. The meeting minutes confirm that the IWC and OSHSB **did not** discuss the IWC's proposed seat regulations. *Id.* Instead, the agencies engaged in only general discussions regarding areas of jurisdiction and then assigned staff members the statutory obligation to consult. *Id.*

- In April 1976, OSHSB staffer Mark Ashcraft analyzed the IWC's proposed seat regulation and opined to an IWC staffer that "CAL/OSHA does not exercise jurisdiction in this area nor at this time do we anticipate exercising jurisdiction." Request for Judicial Notice, Exh. 7. Yet, Mr. Ashcraft made proposed revisions to the IWC's seat regulations, which the IWC did not accept. *Id.*

- In May 1976, OSHSB staffer Ron Rinaldi opined that the IWC's proposed seat regulations posed "no conflict" with CAL/OSHA. Request for Judicial Notice, Exh. 8.

- In October 1976, the 1976 Wage Orders were scheduled to go into effect. *Hitchcock Trans. Co. v. Industrial Welfare Commission*, 27 Cal. 3d 736, 738 (1980); Request for Judicial Notice, Exh. 9. Shortly before the effective date, however, several of the Wage Orders were challenged in court.

- In August 1979, the California Supreme Court ordered the IWC to develop an adequate Statement of Basis for Wage Order 5-1976 within 120 days of the Court's decision. *Cal. Hotel and Motel Assn.*, 25 Cal. 3d at 217. The Court did not stay the enforcement or invalidate Wage Order 5-1976, however, because it wanted to preserve the status quo of having the Wage Order be in effect. *Id.*

- In February 1979, while the litigation on the 1976 Wage Orders was still pending, Margaret Miller, staff member of the IWC, communicated by letter to Mr. Rinaldi that the IWC was reviewing its Wage Orders and that she would like to consult with him on any new regulations. Request for Judicial Notice, Exh. 10. This was the beginning of the process of promulgating the 1980 Wage Orders, which included an amendment to Section 14 inserting a clause at the end of subsection (b) that employees be permitted to use seats "when it does not interfere with the performance of their duties." Request for Judicial Notice, Exh. 11.

- In March 1979, Mr. Rinaldi reviewed the IWC's new orders and wrote a letter to Ms. Miller identifying four sections, none of which dealt with seats, where overlap was possible. Request for Judicial Notice, Exh. 12. In this memorandum, Mr. Rinaldi opined that there was "no conflict" as to Section 14, like he did in 1976. *Id.* This approval, however, was of the 1976 language of the Section and did not include the amendment eventually promulgated. *Id.*

- On July 26, 1979, following this staff consultation, the IWC met with the OSHSB to discuss the new set of Wage Orders. The minutes and transcript from this meeting reflect that the Commission and Board consulted and voted on the overlap of only those specific sections that Mr. Rinaldi identified as potential problem areas. Request for Judicial Notice Exhs. 13 and 14. The Commission and Board did not specifically address seats or the amendment to the seat

regulation. *Id.* Instead, the Board and Commission, after addressing the staffer's concerns, summarily stated that they "see no other areas of overlapping." *Id.*

- On August 30, 1979, the agencies met again and determined, after the IWC revised Sections 9 and 13 as discussed in the July 26 meeting, that there was no overlapping jurisdiction as to those two sections. Request for Judicial Notice, Exh. 15. The agencies did not discuss seats at this meeting. *Id.*

- The same seat language from Wage Order 7-1980 has remained in effect since its implementation. *See* Wage Orders 7-1998, 7-2000, and 7-2001, Request for Judicial Notice Exhs. 16-18 respectively.

- In December 1979, an employers' association challenged the 1980 Wage Orders, but did not raise the "consultation" requirement of Section 1173. Instead, the employers' association argued that the IWC failed to develop an adequate statement of basis as to the Wage Orders and that the IWC had no jurisdiction over those sections regulating the health and safety of employees. *Id.* at 709-16, 719-25. The employers' association further challenged the Wage Orders on the substantive grounds that the IWC violated the California Environmental Quality Act and federal and state labor relations statutes. *Id.* at 716-19, 725-29.

- In July 1980, the California Supreme Court held that the IWC had jurisdiction over all sections of the Wage Orders promulgated and developed adequate statements of basis for the Wage Orders. *Id.* at 735.

Based on this administrative history, it is plain that the IWC and OSHSB improperly delegated to staff members the obligation to consult regarding Section 14. There is, however, one appellate decision, over a strong dissent, which found that adequate consultation took place, at least to the 1976 Wage Orders. *California Manufacturers Association v. Industrial Welfare Commission*, 109 Cal. App. 3d 95 (1980) (*CMA*). In that case, the majority stated that it "agreed that it [the IWC] could not delegate its responsibilities." *Id.* at 122 (citing *Henning*). The majority, however, went on to reason that "the statute does not prescribe what form consultation should take or mandate any specific procedure," and concluded that "the evidence is that the commission and board held one meeting and thereafter consulted through staff and written

communications. That appears to have been all that the nature of the case required." *Id.*.

The majority's reasoning in CMA does not withstand scrutiny and should not be followed by this Court. *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088 (N.D. Cal. 2007) ("In the absence of controlling California Supreme Court precedent," a Federal court is "*Erie*-bound to apply the law as it believes that court would do under the circumstances."). As the dissent in *CMA* correctly points out, the prohibition against delegating the consultation obligation to staff members is itself a standard that must be followed:

> The record in the case at bench discloses without contradiction that there was one meeting between the commission and the Safety Board on December 9, 1975. **At the meeting the consulting parties were given the misguided advice that they could delegate to their staffs the function of ascertaining and defining those areas in which there was a conflict in jurisdiction.** The commission and the board made no determination of the areas of potential conflicting jurisdiction; that statutory duty was left entirely to the staffs.

*Id.* at 129.

The majority in *CMA* also reasoned that consultation was unnecessary because no overlap was actually found. That reasoning merely begs the question, however, because it is the duty of the IWC and OSHSB, as agencies, to determine whether any overlap exists. The point of consultation, as is evident from Section 1173, is for the agencies to adequately determine whether overlap or conflict exists, not staff.

In short, the IWC must be held to comply with Section 1173, and not delegate its obligations to staff members. With the advent of PAGA, this is even more crucial, so that companies do not have private staff members making regulatory decisions that are, in turn, enforced by private attorneys general. Accordingly, this Court should hold that Section 14 is invalid based on lack of agency consultation, and hold that Plaintiff's PAGA claim – as predicated on Section 14 – fails to state a claim.

///

///

///

///

**3. To The Extent PAGA Applies To Section 14 Of The Wage Order, It Violates The Equal Protection Clause of the U.S. Constitution**

The Equal Protection Clause prohibits states from denying any person within its jurisdiction equal protection of the law. *See* U.S. Const. amend. XIV, §1. This protection extends to corporations. *See Santa Clara County v. Southern Pacific R. Co.*, 118 U.S. 394, 396 (1886). When, as here, the challenged statute does not impinge on a fundamental right, courts apply a "rational basis" test. *Board of Supervisors v. Local Agency Formation Comm'n of Sacramento County*, 3 Cal. 4th 903, 913 (1992). A statute violates the rational basis test when it proscribes different penalties for the same alleged misconduct. *Lett v. Paymentech*, 81 F. Supp. 2d 992, 1001 (N.D. Cal. 1999) (holding that Sections 2751 and 2752, which imposed treble damages for failing to have written commission contracts, violated the Equal Protection Clause); *accord*, *State v. Richmond*, 730 N.W.2d 62 (Minn. Ct. App. 2007) (statute violates the Equal Protection Clause when it prescribes different punishments or different degrees of punishment for the same conduct committed under the same circumstances by persons similarly situated); *see also*, *Reynolds v. Sims*, 377 U.S. 533, 565 (1964) ("[T]he concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged."); *Southern R. Co. v. Greene*, 216 U.S. 400, 412 (1910) ("The equal protection of the laws means subjection to equal laws, applying alike to all in the same situation.").

As applied to alleged seat violations, PAGA violates the rational basis test because it promulgates different penalties for the same alleged misconduct. At its core, PAGA allows plaintiffs to seek penalties on a per pay period basis. Under the Labor Code, an employer may lawfully adopt one of three pay periods: weekly, biweekly (every two weeks), or semi-monthly (twice per month). § 204(d). Using these three different pay periods, let us assume that three different employers, each employing 5,000 hourly employees in California, failed to provide seats throughout 2008. These three lawful payroll decisions give rise to substantially unequal penalties:

| | EMPLOYER A | EMPLOYER B | EMPLOYER C |
|---|---|---|---|
| **Pay period frequency** | Weekly | Bi-weekly | Semi-monthly |
| **Number of pay periods in 2008** | 52 | 26 | 24 |
| **Total number of pay periods in 2008 (total employees x pay periods each)** | 260,000 | 130,000 | 120,000 |
| **Penalty per pay period** | $100 | $100 | $100 |
| **Total penalties incurred in 2008 (total pay periods x penalty per pay period)** | $26,000,000 | $13,000,000 | $12,000,000 |

This chart shows that Employer A is subject to $13,000,000 more in penalties than Employer B and $14,000,000 more than Employer C, even though the penalized conduct is the same in all three cases – failing to provide seats for an entire year for 5,000 California employees. While PAGA's scheme may have some rational basis when it penalizes paycheck defects (because the penalty ties to issuance of the paycheck), there is no rational basis for penalizing employers based on pay periods when the alleged harm is the failure to provide a seat. Accordingly, this Court should hold that PAGA violates the Equal Protection Clause to the extent it applies to Section 14 of Wage Order.

**4. PAGA Violates The California Constitution's Separation of Powers Doctrine.**

The California Constitution – like the federal Constitution – is based on a separation of powers. Cal. Const. art. III §3 ("The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."). Also like the federal Constitution, the California Executive Branch is charged with enforcing the law. Cal. Const. art. V §1 ("The supreme executive power of this State is vested in the Governor. The Governor shall see that the law is faithfully executed."). When a statute assigns Executive Branch prosecutorial powers to persons not under the direct control of the executive, and does not grant the Executive Branch sufficient

ongoing control, it violates the separation of powers doctrine. *Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993); *United States v. Shasta Services, Inc.*, 440 F. Supp. 2d 1108, 1112 (E.D. Cal. 2006) (reviewing both the federal and California False Claims Act and stating that "the False Claims Act passes muster under a separation of powers analysis only if the government retains sufficient control over *qui tam* actions pursued in its name.").

In *Kelly*, a former Boeing employee alleged that Boeing violated the False Claims Act by improperly charging the government for certain facilities lease costs. *Id.* at 745. The plaintiff initiated a *qui tam* action under the False Claims Act by serving his complaint on the government; the government investigated the allegations but decided not to intervene in the case. *Id.* Plaintiff then served an amended complaint on Boeing, which Boeing moved to dismiss based on separation of powers grounds. *Id.* The District Court denied Boeing's motion but certified an interlocutory appeal. *Id.*

On appeal, the Ninth Circuit noted that the case did not involve "the type of separation of powers problem posed by one branch of government arrogating power at the expense of another," but rather, required the Court to "determine the extent to which the legislative branch may, while remaining within constitutional boundaries, diminish the executive branch's authority without taking any of that authority as its own." *Id.* at 750. In such cases, "the proper separation of powers inquiry is whether Congress has 'impermissibly undermined' the role of [another] branch." *Id.* (quoting *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 856 (1986)). According to *Kelly*, that inquiry focuses on the degree of control the Executive Branch retains when prosecutorial power is assigned to persons not under the supervision of the Executive Branch. *Kelly*, 9 F.3d at 751.

*Kelly* held that the False Claims Act provides for sufficient, ongoing Executive Branch control, and does not violate the separate of powers doctrine, because the Executive Branch can: (1) intervene and take primary responsibility for prosecuting the action; (2) seek judicial limitation of the relator's participation; (3) seek a judicial stay of the relator's discovery, regardless of whether it intervenes; (4) seek any alternate remedies available, including through administrative proceedings; and (5) move to dismiss any case which it believes has no merit. *Id.*

at 753, 760.[3]

Unlike the False Claims Act, PAGA does not authorize ongoing Executive Branch control. Under PAGA, a plaintiff need only notify the LWDA of alleged Labor Code violations and give the LWDA (the agency so strapped for resources that PAGA was enacted) the opportunity to investigate. § 2699.3(a).[4] If plaintiff does not hear back from the LWDA within 33 days, plaintiff may proceed under PAGA, without any further LWDA involvement. § 2699.3(a). If the LWDA later decides to investigate, but does not to issue a citation, the employee may *still* proceed under PAGA. § 2699.3(a)(2)(B).

In addition, and also unlike the False Claims Act, once the plaintiff commences the PAGA action, the LWDA has no future control over that litigation. PAGA does not authorize the LWDA to (1) intervene in a case and then take primary responsibility for prosecuting the action; (2) seek judicial limitation of the plaintiff's participation; (3) seek a judicial stay of the plaintiff's discovery; (4) seek any alternate remedies available, including through any administrative proceeding; or (5) authorize the LWDA to move for dismissal of a case which it believes has no merit. Under *Kelly*, the Executive Branch's ability to dismiss a case was central to the constitutionality of the False Claims Act. *Kelly*, 9 F.3d at 754. Under PAGA, the Executive Branch can neither prevent nor dismiss a PAGA claim. To the contrary, even if the LWDA believes after investigation that no citation should issue, plaintiff gets to proceed despite the no-action decision made by the authorized Executive Branch prosecutor. § 2699.3(a)(2)(B). This is

---

[3] The Supreme Court has left open the constitutional reality of the False Claims Act. *See Vermont Agency of Natural Resources v. United States*, 529 U.S. 765, 778 n.8 (2000). Separation of powers issues under the False Claims Act has also drawn the attention of federal Office of Legal Counsel. *See Constitutionality of the Qui Tam Provisions of the False Claims Act*, U.S. Dep't of Justice, Office of Legal Counsel, 13 U.S. Op. Off. Legal Counsel 207, 1989 WL 595854 (1989) (arguing in a Memorandum Opinion to the Attorney General that "the qui tam provisions of the False Claims Act violate the separation of powers doctrine because they impermissibly infringe on two aspects of the President's authority to execute the laws: the discretion whether to prosecute a claim and the authority to control the conduct of litigation brought to enforce the Government's interests.") The irony, of course, is that the Executive Branch has very little incentive to advance this separation of powers argument because (a) the Legislative Branch is not aggrandizing its power (it is giving power to private citizens) and (b) the Executive Branch is strapped for resources, so the additional "help" it receives from private litigants was a driving reason for the statute in the first place. Here, however, the LWDA has expressed concerns with PAGA and supports its repeal. Request for Judicial Notice, Exh. 19.

[4] The LWDA is an agency that reports directly to the Governor, and the Secretary of the LWDA is a member of the Governor's Cabinet. Cal. Const. art. V §1; California Labor and Workforce Development Agency, http://www.labor.ca.gov/aboutindex.htm (2008).

a serious systemic flaw.

In sum, PAGA violates constitutional safeguards because private plaintiffs may proceed largely unbridled, with no executive oversight by the LWDA or others of the Executive Branch. Thus, PAGA violates the separation of powers doctrine embodied by the California Constitution, and should be struck down as unconstitutional.

#### 5. To The Extent Plaintiff Advances A Viable Legal Theory, She Fails to Allege Sufficient Facts to State a Claim.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). This notice pleading standard is by no means onerous, but it is not toothless either.

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007), an adequate pleading must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Id.* at 555. "[A] formulaic recitation of the elements of a cause of action will not do…." *Id.* Rather, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "Two working principles underlie … *Twombly*":

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. ***Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice….*** Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But ***where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."*** Fed. R. Civ. P. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1940 (2009) (internal citations omitted).

Here, Plaintiff's Complaint consists of threadbare recitals of the elements of a claim based on conclusory statements. Plaintiff simply alleges that she regularly operated a cash register and that Blockbuster failed to provide her a seat, "despite the fact that the nature of cashier work reasonably permits the use of seats." (Complaint, ¶7). Plaintiff fails to allege any *facts* as to why

the nature of her work reasonably permits the use of a chair. Before this case is allowed to proceed to costly discovery, Plaintiff must allege supporting facts, not just conclusions about what she hopes to prove. If she cannot cure, as Blockbuster believes she will not be able to, her claims should be dismissed with prejudice.

**III. CONCLUSION**

Blockbuster respectfully requests that the Court grant its Motion to Dismiss.

Dated: June 18, 2009

MORGAN, LEWIS & BOCKIUS LLP

By [signature]
Brian Lee Johnsrud
Attorneys for Defendant
BLOCKBUSTER INC.